1  BRETT J. WILLIAMSON (S.B. #145235)
2  bwilliamson@omm.com
   CAMERON W. WESTIN (S.B. #290999)
3  cwestin@omm.com
   O'MELVENY & MYERS LLP
4  610 Newport Center Drive, 17th Floor
   Newport Beach, CA  92660-6429
5  Telephone:   (949) 823-6900
   Facsimile:    (949) 823-6994
6

7  Attorneys for Plaintiff
   THERABODY, INC.
8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                         **SOUTHERN DIVISION**

13

| | |
|---|---|
| 14  THERABODY, INC., | Case No. |
| 15                              Plaintiff, | COMPLAINT FOR: |
| 16      v. | (1) Product Disparagement and |
| HYPER ICE, INC., |      Trade Libel (Lanham Act); |
| 17                              Defendant. | (2) False Advertising (Cal. Bus. & |
| 18 |      Prof. Code); |
| 19 | (3) Defamation (Common Law); |
| | (4) Trade Libel (Common Law); |
| 20 | (5) Tortious Interference with |
| 21 |      Existing and Prospective |
| |      Economic Advantage (Common |
| 22 |      Law); and |
| 23 | (6) Unfair Competition (Cal. Bus. & |
| |      Prof. Code) |
| 24 | |
| 25 | **JURY TRIAL REQUESTED** |

26

27          Plaintiff THERABODY, INC. ("Therabody"), for its claims for relief against

28  defendant HYPER ICE, INC. ("Hyper Ice"), alleges as follows:

# I. <u>NATURE OF ACTION</u>

1.     Therabody is a pioneering health and wellness company, known for its cutting-edge performance and recovery technology.  This action arises out of defendant Hyper Ice's maliciously false and misleading statements impugning Therabody's products and reputation.  Through these false statements, and motivated by animus toward its chief competitor, Hyper Ice intended to cause and has caused damage to Therabody's business and business prospects.  As a result, Therabody now asserts claims for product disparagement and trade libel under the Lanham Act, 15 U.S.C. § 1125(a), false advertising under Cal. Bus. & Prof. Code § 17500 *et seq.*, common law defamation, trade libel, tortious interference with existing and prospective economic advantage, and unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*, as described below.

# II. <u>PARTIES</u>

2.     Therabody is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 1640 South Sepulveda Boulevard, Suite 300, Los Angeles, California 90025.

3.     On information and belief, Hyper Ice is a corporation organized and existing under the laws of the State of California, claiming to have its principal place of business at 525 Technology Drive, Suite 100, Irvine, California 92618.

# III. <u>JURISDICTION AND VENUE</u>

4.     This Complaint arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as amended, the law of the State of California, and the common law.

5.     This Court has subject matter jurisdiction over the federal cause of action under 28 U.S.C. § 1331.  This Court has subject matter jurisdiction over the state and common law causes of action under 28 U.S.C. § 1367(a) because these claims are so related to the federal claim within the original jurisdiction of this Court that they form part of the same case or controversy.

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

6.      This Court has personal jurisdiction over Hyper Ice because it resides in this District.  Moreover, this Court has personal jurisdiction over Hyper Ice because it conducts business in this District; has purposefully availed itself of the rights and benefits of California law; and has substantial, continuous, and systematic contacts with the State of California and this District.

7.      Venue is proper under 28 U.S.C. § 1391(b)–(d) because Hyper Ice resides in this District.  In addition, Therabody is located in this District.  Because Hyper Ice's libelous press release and other tortious conduct has caused substantial harm to Therabody, that harm has occurred in this District.  Assignment of this case to the Southern Division is proper pursuant to General Order 23-15, filed November 29, 2023, because Hyper Ice, the only defendant, resides in the Southern Division.

## IV.  FACTUAL BACKGROUND

### Therabody's History of Innovation

8.      In the fall of 2007, Therabody founder Dr. Jason Wersland was involved in a traumatic motorcycle accident that severely damaged his soft tissue.  Dr. Wersland, now a trained chiropractor, surveyed the health and wellness market in search of some technique or product to alleviate his debilitating pain.  He found nothing.

9.      Dr. Wersland decided to take matters into his own hands.  Curious about the potential ameliorative effects of vibration on the body, Dr. Wersland began deconstructing common tools and developed an experimental device that used a jigsaw as a base motor.  By 2008, Dr. Wersland had created a makeshift percussive therapy device that worked—it relieved the pain that had made his everyday tasks a struggle.  Dr. Wersland knew that his innovative device had the potential to change the health and wellness industry and help people live better, healthier lives.  The homemade device, which Dr. Wersland began using with his own clients, received rave reviews and produced tremendous therapeutic results.  This device would eventually become the first "Theragun" product.

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

10.     As Dr. Wersland continued to experiment with his innovative device, he discovered that certain depths and speeds of percussion were incredibly effective at easing muscle pain.  In 2016, after numerous prototypes and almost a decade after Dr. Wersland developed the first version of his innovative percussive therapy device, the Theragun G1 hit the market.  By 2019, Dr. Wersland's percussive therapy devices were used by more than 250 sports teams, as well as physical therapists, trainers, and everyday people worldwide.

11.     Today, Therabody is a leading wellness technology pioneer that empowers people around the world to live healthier lives.  Theragun, the category-defining percussive therapy device, was just the start for Therabody.  Therabody has created other innovative, science-backed wellness solutions involving pneumatic compression, electrical stimulation, and vibration therapy.

12.     To protect these innovations in wellness technology, Therabody has applied for and been issued nearly 600 utility and design patents in the United States and throughout the world, and holds numerous trademark and copyright registrations. Among Therabody's large intellectual property portfolio are multiple utility patents covering novel connector systems for percussive massage devices, including U.S. Patent No. 10,428,850, issued on October 1, 2019 (the "'850 Patent'"), and U.S. Patent No. 10,557,490, issued on February 11, 2020 (the "'490 Patent").

**Hyper Ice's Bad Faith, Defamatory Press Release**

13.     Hyper Ice is a Therabody competitor.  On information and belief, Hyper Ice released its first massage therapy device for the consumer market—the "Hypervolt" product—in 2018, two years after the Theragun was introduced into the market.

14.     On January 3, 2024, in a blatant, malicious attempt to harm its biggest competitor, Hyper Ice published a knowingly false press release that disparaged the quality of Therabody's products and baselessly accused Therabody of copying Hyper Ice's products.  The press release specifically stated:

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.

Hyperice made national headlines in 2018, launching the Hypervolt, the world's first "modern-day" massage gun, featuring a brushless motor system, variable speed settings, and QuietGlide® technology. ***The success and rapid scale of the Hypervolt led to an influx of massage gun brands entering the market to replicate this technology, including Therabody***.

. . .

"In 2018, when we launched the Hypervolt at a more consumer-friendly price point, our business accelerated rapidly – so much so that we began to see an extraordinary amount of ***Hypervolt knockoffs and imitators*** enter the market," said Jim Huether, CEO of Hyperice. . . .  "We will use the legal system aggressively ***to clean up the percussion market from imitators and knockoffs who we believe are using Hyperice's IP in their devices***."

. . .

"We will aggressively defend our intellectual property rights and take all appropriate steps to ensure that our innovative products and technology are not ***misappropriated by opportunists seeking to knock us off***," said Jon Howell, General Counsel at Hyperice.

Hyper Ice's January 3, 2024 press release (the "Press Release") is attached hereto as Exhibit 1 and incorporated herein (emphasis added in above excerpt).

15.    These statements and others in the Press Release were knowingly false. First, as Hyper Ice was well aware, the Theragun G1 was on sale to the public by July 2016—long before the Hypervolt was released in 2018—making Hyper Ice, if anyone, the "imitator."  Second, there is no basis for Hyper Ice's preposterous claim that the Theragun is a "knockoff" of the Hypervolt.  The 2018 version of the Hypervolt used vibration technology, not percussion, and there has never been any physical or visual similarity between Therabody's percussive massagers and Hyper Ice's massagers, as demonstrated below:

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.





Theragun G1  (released in 2016)        Theragun PRO  (released in 2022)





Hypervolt  (released in 2018)        Hypervolt 2  (released in 2021)

Third, the connectors used to secure the massage head to the device body in the Therabody products that are said to be "knockoffs" of the Hypervolt devices use completely different mechanisms than the Hypervolt devices.  And fourth, the Hyper Ice patent described in the Press Release was issued just ***one day before*** the Press Release, and there is no evidence that Therabody was even aware of the patent before the Press Release, making it impossible for Therabody to have "misappropriated" Hyper Ice's allegedly "innovative technology."   In fact, Therabody was issued

- 6 -        COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

the '850 Patent, the '490 Patent, and other intellectual property rights long before Hyper Ice obtained its patent, and Therabody filed applications leading to those patents before Hyper Ice began selling its first Hypervolt product.

16.     Hyper Ice widely distributed the Press Release to the media.   For example, the Press Release appeared on Business Wire, Fitt Insider, Athletech News, and Yahoo! Finance.  Its dissemination was nationwide, including within the state of California.

17.     The wide dissemination, including within the state of California, of Hyper Ice's false accusations against Therabody achieved Hyper Ice's intended purpose of damaging Therabody's business, including its business reputation, the reputation of its products, and its existing and prospective business relationships.  The brunt of the injury suffered by Therabody occurred in California.  Hyper Ice was well aware that this would be the case, considering California is where Therabody is incorporated and maintains its principal place of business.

**Hyper Ice's Other Bad Faith Conduct**

18.     In January 2024, Hyper Ice maliciously made false, defamatory statements to Fleet Feet, a Therabody customer, about Therabody and its products, including that Therabody is an "opportunist seeking to knock [Hyper Ice] off" and that Therabody's percussive massagers are "knockoffs" of the Hypervolt.

19.     On or about January 27, 2024, at the Boston Run Show trade exposition, Hyper Ice maliciously made false, defamatory statements to Therabody customers and potential customers about Therabody and its products.  For example, Hyper Ice representatives approached numerous retailers—customers and potential customers of Therabody—and made statements effectively accusing Therabody of imitating and knocking off Hyper Ice's products.  Hyper Ice representatives also made statements to retailers exhibiting at the exposition that the market "is going to get a lot smaller soon," implying that Therabody's ability to sell its percussive massage products would be impaired legally as a result of Hyper Ice's false allegations.

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.

20.    On information and belief, the above communications are only individual examples of a larger concerted campaign by Hyper Ice to directly contact Therabody customers and prospective customers with false, disparaging comments about Therabody and its products (including sending copies of the Press Release directly to such customers and prospective customers) for the purpose of injuring Therabody's existing and prospective business relationships, and therefore benefit Hyper Ice in conducting its competing business.

21.    The injury to Therabody as a result of Hyper Ice's conduct as alleged herein is and will continue to be substantial.  Hyper Ice's Press Release states that, "[i]n 2023, the massage gun market has been valued at USD 542.6 million and is expected to reach well over USD 1 billion over the coming years."  *See* Exhibit 1.  Hyper Ice's efforts to gain market share from Therabody, its chief competitor, through the malicious and knowingly false statements in the Press Release and as communicated directly to Therabody customers and prospective customers, are indisputably calculated to benefit Hyper Ice at the expense of Therabody.

## V.  CLAIMS FOR RELIEF

**COUNT ONE – Product Disparagement and Trade Libel (15 U.S.C. § 1125(a))**

22.    This is a claim for product disparagement and trade libel under 15 U.S.C. § 1125(a).  The allegations of Paragraphs 1 through 21 above are repeated and realleged as though fully set forth herein.

23.    In its commercial advertising, including the Press Release, Hyper Ice has made, in bad faith, misleading and false representations of fact regarding Therabody's products.

24.    In making such false and misleading representations, Hyper Ice acted intentionally, with knowledge of, and in willful and conscious disregard of Therabody's rights.

25.    These misleading and false representations tended to and/or actually deceived a substantial portion of the intended audience and were material in that these

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

misrepresentations will likely influence Therabody's customers' purchasing decisions.

26.    Hyper Ice caused its false and misleading representations to enter interstate commerce.

27.    As a direct and proximate result of the foregoing, Therabody has been and is likely to be further injured by both a diversion of sales from itself to Hyper Ice and by a lessening of the goodwill associated with Therabody's business and its products.  The extent of Therabody's injuries are to be determined at trial.

28.    The damage to Therabody's business, goodwill, and reputation is such as to warrant the trebling of damages under 15 U.S.C. § 1117(a) in order to provide just compensation.

**COUNT TWO – False Advertising (Cal. Bus. & Prof. Code § 17500 *et seq.*)**

29.    This is a claim for false advertising under § 17500, *et seq.* of the California Business and Professions Code.  The allegations of Paragraphs 1 through 28 above are repeated and realleged as though fully set forth herein.

30.    In its commercial advertising, including the Press Release, Hyper Ice has made, in bad faith, misleading and untrue representations of fact regarding Therabody's business and products.

31.    These misleading and untrue representations tended to and/or actually deceived a substantial portion of the intended audience.

32.    On information and belief, Hyper Ice made its misleading and untrue representations from the State of California and caused these misleading and untrue representations to be disseminated before the public of the State of California.

33.    Hyper Ice knew, or by the exercise of reasonable care should have known, that its representations regarding Therabody's business and products were misleading and untrue.

34.    As a direct and proximate result of the foregoing, Therabody has sustained and will continue to sustain substantial injury to its business and reputation.

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.

Therabody is entitled to injunctive relief and restitution in an amount to be determined at trial.

## COUNT THREE – Defamation (Common Law)

35. This is a claim for defamation. The allegations of Paragraphs 1 through 34 above are repeated and realleged as though fully set forth herein.

36. On January 3, 2024, Hyper Ice maliciously published false, defamatory statements about Therabody and its products as set forth above. Hyper Ice published its defamatory statements to third parties including Business Wire, Fitt Insider, Athletech News, and Yahoo! Finance.

37. In January 2024, Hyper Ice maliciously made false, defamatory statements to Fleet Feet, a Therabody customer, about Therabody and its products as set forth above.

38. On or about January 27, 2024, at the Boston Run Show trade exposition, Hyper Ice maliciously made false, defamatory statements to Therabody customers and potential customers about Therabody and its products as set forth above.

39. Hyper Ice's statements were defamatory in that they injured Therabody in the conduct of its business and deterred prospective customers of Therabody from doing business with Therabody.

40. Hyper Ice's defamatory statements impugned Therabody's business reputation and its ability to do business, and therefore constitute defamation *per se*.

41. As a direct and proximate result of Hyper Ice's defamatory statements, Therabody has sustained and will continue to sustain substantial injury to its business and reputation. The amount of Therabody's damages are to be determined at trial.

42. Hyper Ice's defamatory conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Therabody's rights, justifying the imposition of punitive and exemplary damages under California Civil Code § 3294.

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.

1

**COUNT FOUR – Trade Libel (Common Law)**

2      43.    This is a claim for trade libel.  The allegations of Paragraphs 1 through

3  42 above are repeated and realleged as though fully set forth herein.

4      44.    On January 3, 2024, Hyper Ice maliciously published false statements

5  about Therabody as set forth above.  Hyper Ice published its false statements to third

6  parties including Business Wire, Fitt Insider, Athletech News, and Yahoo! Finance.

7      45.    In January 2024, Hyper Ice maliciously made false statements to Fleet

8  Feet, a Therabody customer, about Therabody and its products as set forth above.

9      46.    On or about January 27, 2024, at the Boston Run Show trade exposition,

10  Hyper Ice maliciously made false statements to Therabody customers and potential

11  customers about Therabody and its products as set forth above.

12      47.    Hyper Ice's false statements have financially harmed Therabody in the

13  conduct of its business and deterred prospective customers of Therabody from doing

14  business with it.

15      48.    As a direct and proximate result of the foregoing, Therabody has been

16  injured in its business and property in an amount to be determined at trial.

17      49.    Hyper Ice's conduct is and has been willful, wanton, malicious,

18  oppressive, and in conscious disregard of Therabody's rights, justifying the

19  imposition of punitive and exemplary damages under California Civil Code § 3294.

20      **COUNT FIVE – Tortious Interference with Existing and Prospective**

21      **Economic Advantage (Common Law)**

22      50.    This is a claim for tortious interference with existing and prospective

23  economic advantage.  The allegations of Paragraphs 1 through 49 above are repeated

24  and realleged as though fully set forth herein.

25      51.    Therabody has economic relationships with various companies in the

26  health and wellness industry that provide Therabody with the probability of future

27  economic benefit.  With knowledge of these relationships and the intent to disrupt

28  them, Hyper Ice wrongfully published and made false statements against Therabody.

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

Hyper Ice's false statements caused the actual disruption of these relationships and, as a result, economic harm to Therabody.

52.     As a direct and proximate result of Hyper Ice's intentional interference with Therabody's existing and prospective economic advantage, Therabody has sustained and will continue to sustain substantial injury to its economic relationships with various companies in the health and wellness industry.   The amount of Therabody's damages are to be determined at trial.

53.     Hyper Ice's conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Therabody's rights, justifying the imposition of punitive and exemplary damages under California Civil Code § 3294.

**COUNT SIX – Unfair Competition (Cal. Bus. & Prof. Code § 17200)**

54.     This is a claim for unfair competition under § 17200 *et seq*. of the California Business and Professions Code.  The allegations of Paragraphs 1 through 53 above are repeated and realleged as though fully set forth herein.

55.     Hyper Ice's acts, as alleged above, constitute unlawful and unfair business practices in violation of § 17200 *et seq.* of the California Business and Professions Code.

56.     As a result of Hyper Ice's statutory unfair competition, Therabody has sustained and will continue to sustain substantial injury to its business and reputation. Therabody is entitled to injunctive relief and restitution in an amount to be determined at trial.

WHEREFORE, Therabody prays for judgment against Hyper Ice as follows:

    1.     As to Count One, an award of damages, including Therabody's lost profits, and disgorgement of Hyper Ice's profits, in an amount to be determined at trial, trebled pursuant to 15 U.S.C. § 1117(a);

    2.     As to Count Two, restitution in an amount to be determined at trial;

- 12 -

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.

3.  As to Counts Three, Four, and Five, an award of compensatory damages, and punitive and exemplary damages pursuant to California Civil Code § 3294, in an amount to be determined at trial;

4.  As to Count Six, restitution in an amount to be determined at trial;

5.  An award of attorneys' fees and costs incurred in bringing this action; and

6.  Such other and further relief, including injunctive relief, as may be just and proper under the circumstances.

Dated:  February 23, 2024           BRETT J. WILLIAMSON
                                    CAMERON W. WESTIN
                                    O'MELVENY & MYERS LLP


                                    By:   /s/ *Brett J. Williamson*
                                    _____
                                          Brett J. Williamson
                                    Attorneys for Plaintiff
                                    THERABODY, INC.

COMPLAINT FOR PRODUCT DISPARAGEMENT, TRADE LIBEL, FALSE ADVERTISING, DEFAMATION, ETC.

1

## **REQUEST FOR JURY TRIAL**

2       Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Therabody, Inc. hereby requests a

3  trial by jury on all issues so triable.

4

5       Dated:  February 23, 2024       BRETT J. WILLIAMSON

6                                  CAMERON W. WESTIN
                                    O'MELVENY & MYERS LLP

7

8

9                               By:   /s/ *Brett J. Williamson*

10                                    Brett J. Williamson

11                    Attorneys for Plaintiff
                    THERABODY, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PRODUCT
DISPARAGEMENT, TRADE LIBEL, FALSE
ADVERTISING, DEFAMATION, ETC.